IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
CASE NO. 4:14-CV-185-F

| | |
|---|---|
| RANDER H. HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| ANN'S HOUSE OF NUTS (FLAGSTONE ) | |
| FOODS), ) | |
| ) | |
| Defendant. | |

This matter is before the court on the Motion to Dismiss/Alternative Motion for Summary Judgment [DE-11] filed by Defendants Ann's House of Nuts ("Ann's") and Flagstone Foods (collectively, "Defendants").[1] For the reasons more fully stated below, the motion [DE-11] is ALLOWED.

## I. BACKGROUND

This is the third action filed by the *pro se* Plaintiff Rander H. Harris against Defendants since the termination of his employment as a plant controller at Ann's facility in Robersonville, North Carolina. Subsequent to Ann's termination of his employment in February 2012, Harris signed a separation and release agreement on March 1, 2012, and received the gross amount of $37,769.59 in exchange for his agreement to release various legal claims against Defendants. *See Harris v. Ann's House of Nuts (Snacks Holding Company)*, No. 4:13OCV-0039-BO, Slip op. at 1 (E.D.N.C. Oct. 10, 2013). The legal claims he agreed to release included (but were not limited

---

[1] Defendants contend that "Flagstone Foods" is an assumed business name used by Snacks Holding Corporation. Defendants also contend that Ann's House of Nuts, Inc., is a wholly owned subsidiary of AHON, Inc., which is a wholly owned subsidiary of Snacks Holding Corporation. Defendants, however, refer to the defendant entities as "Defendants" throughout their memoranda, and the court will do the same.

to) all claims Harris then had under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA"). *Id.* at 2.

Harris initiated his first action in this court by filing a complaint alleging claims of age and race discrimination on February 13, 2013. *Id.* Harris alleged that he signed the release agreement because he had been told that his termination was due to reorganization, but later learned that his position was never eliminated. *Id.* United States District Judge Terrence W. Boyle allowed Defendants' motion for judgment on the pleadings in that case, finding that the release agreement was valid, and rejecting Harris' argument that that release should be invalidated on the basis of fraud, noting that Harris had failed to return the consideration. *Id.* at 5-6.

Thirty-six days later, Harris filed another action in this court against Defendants, *Harris v. Ann's House of Nuts (Flagstone Foods)*, Case No. 4:13-CV-240-F (hereinafter, *Harris II*). In the second action, Harris alleged that three individuals who work for Defendants, Kevin McMenimen ("McMenimen"), Greg Britt ("Britt"), and Mike Bley ("Bley"), "conspired to retaliate against [Harris] by suppressing a key witness to their discriminatory actions against [him]." *Harris II*, Compl. ¶ 7. Defendants moved to dismiss Harris' complaint, arguing that it failed to state a plausible claim for relief because it alleged facts that were not actionable under either Title VII or the ADEA, and it failed to identify an adverse employment action. The undersigned allowed Defendants' motion to dismiss in that action on August 26, 2014, "for the reasons stated in the Defendant's brief." *Harris II*, slip. op. at 1 (E.D.N.C. Aug. 26, 2014).

Thereafter, on September 30, 2014, Harris filed the instant lawsuit, alleging that McMenimen, Britt, and Bley conspired to and retaliated against him for having filed a charge with the Equal Employment Opportunity Commission ("EEOC") "by giving an unjustified

negative job reference on [him] to interfere with [his] prospect for future employment." Compl. [DE-1] ¶¶ 4, 6, 7. Harris alleges that the retaliation occurred on or about November 6, 2012, but he found about it on May 8, 2013. *Id.* ¶ 8. Specifically, he alleges that Management Recruiters of Bethlehem recruited him for the position of plant controller for a local company, and told Harris that his employment package was being sent to the prospective employer immediately. He further alleges that Management Recruiters then talked to Defendants, and received an unjustified negative reference about Harris. *Id.* ¶ 9. According to the Complaint, Harris filed a charge with the EEOC or about August 1, 2013. *Id.* at 11.

Defendants filed the instant motion, arguing that the complaint must be dismissed because Harris should have discovered the alleged retaliatory act near or around November 6, 2012, and his filing of the EEOC charge was therefore untimely. Alternatively, Defendants contend they are entitled to summary judgment "because the facts show that Harris's claims are categorically false." Mem. in Support of Mot. for Summ. J. [DE-12] at 11-12.

## II. STANDARD OF REVIEW

When faced with a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must determine the legal sufficiency of the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In so doing, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (citing *Twombly*, 550 U.S. at 555 (2007)). Moreover, although the court draws all reasonable factual

3
Case 4:14-cv-00185-F Document 17 Filed 06/24/15 Page 3 of 9

inferences in a plaintiff's favor, the court is not obligated to accept a complaint's legal conclusions drawn from the facts. *Iqbal*, 129 S.Ct. at 1949-50. Nor must the court accept as true "unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 301-02 (4th Cir. 2008) (quotations omitted). Furthermore, the court must keep in mind that "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 93 (internal citation omitted). Notwithstanding the court's obligation to liberally construe a *pro se* plaintiff's allegations, however, the court cannot ignore a clear failure to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

"If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Under Rule 56, summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden initially of coming forward and demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The facts and all reasonable inferences must be viewed in the light most favorable to the non-movant when making the summary judgment determination. *Liberty Lobby*, 477 U.S. at 255. Once the moving party has met its burden, the non-moving party then must come forward and demonstrate that such a fact issue does indeed exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986). Such facts must be presented in the form of exhibits and sworn affidavits. *Celotex Corp.,* 477 U.S. at 324. Failure by a plaintiff to rebut a defendant's motion with such evidence on his behalf will result in summary judgment when appropriate. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

## III. DISCUSSION

As the court has recounted above, Defendants move to dismiss the complaint, or in the alternative for summary judgment, arguing that Harris failed to file a timely EEOC charge and that the facts show that his claims are categorically false. In response, Harris argues that he filed an EEOC charge within the applicable time frame after discovering the retaliation, and that he has created an issue of credibility as to Defendants' witnesses. The court finds that even if it assumes that Harris timely filed his charge with the EEOC, the Defendants are nevertheless entitled to summary judgment. Harris proffers no evidence, other than his speculation, that any of the Defendants' employees provided a negative employment reference about him.

A plaintiff may establish a Title VII retaliation claim under the burden-shifting framework set forth in *McDonnell Douglas*. *See Foster v. Univ. of Md.-Eastern Shore*, ___ F.3d ___, 2015 WL 2405266, at *5 (4th Cir. May 21, 2015). First, a plaintiff bears the burden of establishing a prima facie case of retaliation by showing "that he engaged in protected activity, that [his employer] took adverse action against him, and that a causal relationship existed between the protected activity and the adverse employment activity." *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). Once the plaintiff establishes a prima facie case, the burden shifts to the employer to establish a legitimate, non-retaliatory reason for the adverse action. *Id.* If the

employer sets forth a legitimate, non-retaliatory reason for the action, the plaintiff then bears the burden of showing the employer's proffered reasons are pretextual or his claim will fail. *Id.*

In this case, Harris has not established a prima facie case; he has not shown that Defendants took any adverse action against him. Defendants have proffered the declaration of the three employees Harris identified in his complaint as conspiring against him and providing a negative job reference about him to Management Recruiters. All three unequivocally state they had no communications with Management Recruiters regarding Harris. *See* Decl. of McMenimen [DE-12-2] ¶¶ 1, 3, 4 (declaring, *inter alia*, "I have never provided a reference of any kind to Management Recruiters regarding Harris"); Decl. of Britt [DE-12-3] ¶¶ 1, 3, 4; Decl. of Bley [DE-12-4] ¶¶ 1, 3,4. Defendants also proffer the declaration of Alex Boone, the Management Recruiters employee who worked with Harris. *See* Decl. of Boone [DE-12-5] ¶ 3. Boone states that Management Recruiters did not request or receive any employment references from any person or company regarding Harris, and he never had a communication with McMenimen, Britt or Bley regarding Harris. *Id.*¶¶ 4-5. He states that he had only one conversation with Harris on November 6, 2012, in addition to two emails he sent him, also on that date. *Id.*¶ 6.

In opposition to this, Harris offers his declaration stating that during their November 6, 2012, phone conversation, about a controller opportunity at a company called Superior Essex, Boone stated the company also was recruiting for a cost accountant. Decl. of Harris [DE-15] ¶ 3. According to Harris, Boone asked him if he could recommend anyone for the position who had recently left Ann's. *Id.* ¶ 3. When Harris told Boone he did not have a recommendation, Boone stated that Management Recruiters had a recruiting business relationship with Ann's, and he would call them directly because he wanted to present candidates for the controller and cost

6

accountant positions at the same time. *Id.* Harris says his last communication was not on November 6, 2012, as Boone stated in his affidavit, but rather on May 8, 2013, when he called Boone to discuss his job search and how he could improve his success. *Id.* ¶ 5. Harris also provided a copy of a recording of his conversation with Boone on May 8, 2013.

> Harris contends:
>
> It was this conversation on May 8, 2013, that triggered my belief that Boone was concealing a contact he made with [Ann's]. It is not reasonable to believe a professional recruiter would not consult with a candidate's former employer, especially if that former employer is his business partner. Until this conversation took place, I simply assumed that I had not been selected for the position and that was not an issue.

Resp. in Opp. to Mot. for Summ. J. [DE-14] ¶ 3. Harris maintains that he has impeached Boone by proffering evidence that he and Boone in fact spoke after November 6, 2012, contradicting Boone's declaration. Based on this, Harris contends that he has created an issue of fact for trial.

The court cannot agree. Harris has created an issue regarding an immaterial fact: the day he and Boone last spoke. *See Liberty Lobby*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."); On the material issue—whether Defendants provided a negative reference to Management Recruiters regarding Harris—he has offered only his own opinion and speculation. The court has listened to the recording proffered by Harris, and there is nothing in the recorded conversation that supports the idea that Boone spoke with Defendants regarding Harris and received a negative reference. Harris' speculation and opinion is insufficient to withstand Defendants' motion for summary judgment. *See Lewis v. City of Virginia Beach Sheriff's Office*, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) ("[T]he nonmoving party must rely on more than conclusory allegations, 'mere speculation,' the 'building of one inference upon another,' the 'mere existence of a scintilla of evidence,' or the appearance of 'some metaphysical

doubt' concerning a material fact.") (citations omitted). Consequently, Defendants' Motion for Summary Judgment [DE-11] is ALLOWED.

Defendants also ask the court to sanction Harris, contending that he is repeatedly harassing them and wasting their—as well as the court's—time with frivolous lawsuits. Defendants note that this action is the third that Harris filed in the span of 19 months, and his litigation history belies the idea that he is litigating in good faith. Specifically, Defendants note that Harris has failed to appeal the court's prior two dismissals of his actions, and instead just files another lawsuit seeking precisely the same amount of damages ($1,130,000) based on a variation of the same core allegations—that McMenimen, Britt and Bley conspired to retaliate against him.

This court does possess the inherent power "to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. Nasco, Inc.*, 501 U.S. 32, 44-45 (1991). Sanctions under the court's inherent power are appropriate where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45-46. Although all three of Harris's actions are largely factually duplicative of each other, the repetition does not (yet) indicate the level of bad faith and vexatious behavior necessary to invoke the court's inherent power to sanction.

With that being said, Plaintiff Rander H. Harris is HEREBY WARNED THAT FEDERAL RULE OF CIVIL PROCEDURE 11 FULLY APPLIES TO HIM, AS IT DOES ALL LITIGANTS AND ATTORNEYS BEFORE THIS COURT. ACCORDINGLY, ANY FUTURE FAILURE TO COMPLY WITH RULE 11 OR ENGAGEMENT IN VEXATIOUS OR BAD FAITH LITIGATION MAY RESULT IN THE IMPOSITION OF SANCTIONS.

8
Case 4:14-cv-00185-F   Document 17   Filed 06/24/15   Page 8 of 9

## IV. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment [DE-11] is ALLOWED. Defendants' request for sanctions is denied. The Clerk of Court is DIRECTED to close this case.

SO ORDERED. This the 23rd day of June, 2015.

*James C. Fox*
James C. Fox
Senior United States District Judge